562 So.2d 1177 (1990)
Edward BOURGEOIS and Alfred Smith
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
No. 89-CA-1631.
Court of Appeal of Louisiana, Fourth Circuit.
May 31, 1990.
*1178 Christopher J. Bruno, Robert J. Bruno, Bruno and Bruno, New Orleans, for plaintiffs/appellants.
Donna R. Moliere, Sessions, Fishman, Boisfontaine, Nathan, Winn, Butler and Barkley, New Orleans, for defendant/appellee.
Before CIACCIO, LOBRANO, WILLIAMS, ARMSTRONG and PLOTKIN, JJ.
PLOTKIN, Judge.
Plaintiffs, Edward Bourgeois and Alfred Smith, appeal a trial court judgment dismissing their action against defendant, State Farm Mutual Automobile Insurance Company. We reverse and award exemplary damages of $2,500, plus interest and costs, to each plaintiff.

Facts
Defendant State Farm provided automobile insurance coverage to Joycelynn Gottfried. On August 22, 1988, Ms. Gottfried lost control of her vehicle and collided with two unoccupied, parked vehicles owned by plaintiffs Smith and Bourgeois. Afterwards, Ms. Gottfried was arrested for driving while intoxicated, charges to which she pled guilty. Her blood alcohol level registered.227. As a result of the accident, State Farm paid plaintiffs' property damage.
Subsequently, plaintiffs filed suit to recover exemplary damages under the provisions of La.C.C. art. 2315.4, which provides as follows:
In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries.
State Farm did not contest the application of the insurance policy to exemplary damages, *1179 only whether exemplary damages applied where there was only property damages and no personal injury and whether all the elements required for recovery under the statute were present.
The matter was submitted to the trial court on briefs, in lieu of a bench trial. In a judgment rendered June 2, 1989, the trial court found that La.C.C. art. 2315.4 was inapplicable to a situation involving only property damage. Furthermore, the trial court found that even if article 2315.4 was applicable, insufficient evidence that Ms. Gottfried's conduct constituted "wanton or reckless disregard for the safety of others," as required by the statute, had been presented. Plaintiffs appealed.

Applicability of La.C.C. art. 2315.4 to property damage
Although this is a matter of first impression for this court, other Louisiana courts have consistently held that article 2315.4 "has a dual purpose, to penalize (and therefore deter) the drunk driver, as well as to provide damages for the victim of such driver." Sharp v. Daigre, 545 So.2d 1063, 1064-65 (La.App. 1st Cir.1989), aff'd, 555 So.2d 1361 (La.1990); Morvant v. United States Fidelity & Guaranty Co., 538 So.2d 1107, 1109 (La.App. 5th Cir.), writ denied, 541 So.2d 875 (La.1989). Likewise, as explained in Creech v. Aetna Casualty & Surety Co., 516 So.2d 1168, 1173 (La. App.2d Cir.1987), writ denied, 519 So.2d 128 (La.1988) "[a]lthough the purpose of punitive damages is to punish and deter, the injured party receives the benefit of such payment and from the plaintiff's standpoint, punitive damages are additional compensation for the egregious conduct inflicted upon him." Additionally, the Louisiana Supreme Court recently determined that allowing insurance coverage for exemplary damages is not against public policy. Sharp v. Daigre, 555 So.2d 1361, 1363-64 (La.1990).
Typically claims for exemplary damages involve bodily injury, but at least one court has awarded exemplary damages for property damages without an accompanying personal injury claim. See Falgout v. Wilson, 531 So.2d 492 (La.App. 1st Cir.), writ denied, 532 So.2d 154 (La.1988). However, the court which decided Falgout was concerned primarily with whether insurance coverage was available for the exemplary damage award. Nonetheless, the First Circuit's intention to allow exemplary damages for property damage without accompanying bodily injury was reaffirmed, in dicta, in Sharp, supra, when the court explained that "a liability policy covers an award for exemplary damages under La. C.C. art. 2315.4 even when personal injury damages were not sought." 545 So.2d at 1067.
In the instant case, the trial judge distinguished Falgout, supra, in his reasons for judgment, which point out that "the plaintiff in Falgout was inside his vehicle at the time it was struck by the intoxicated defendant's vehicle ... [and] there was the added aspect of apprehension which was sufficient to provoke physical injuries as contemplated by C.C. art. 2315.4." The trial court pointed out that the plaintiffs' vehicles in the instant case were unoccupied; therefore, the plaintiffs suffered no apprehension of physical injury.
The defendant in the instant case contends that the word "injuries" refers only to bodily injury, especially since the other code articles on tort liability utilize the broad term "damages." Thus, defendant asserts, the legislature must have intended to narrow the scope of exemplary damages. However, the word "injury" is defined broadly in Black's Law Dictionary (5th ed. 1979) pp. 706-07 as follows: "Any wrong or damage done to another, either in his person, rights, reputation, or property. The invasion of any legally protected interest of another." Other types of injury, such as "accidental injury," "civil injury," and "bodily injury," are defined separately.
Because the purpose of article 2315.4 is to deter drunk driving, and the definition of the word "injuries," which is used in the article, traditionally includes property damage, the deterrent effect of article 2315.4 is best served by including property damage without accompanying bodily injury within the ambit of its coverage. To allow otherwise would lessen the *1180 detrimental impact of the article. The trial court's judgment to the contrary is reversed.

Requirements under La.C.C. art. 2315.4
Recovery under article 2315.4 requires proof of the following elements:
(1) The defendant was intoxicated or had "a sufficient quantity of intoxicants to make him lose normal control of his mental and physical facilities." Levet v. Calais & Sons, Inc., 514 So.2d 153, 159 (La.App. 5th Cir.1987),
(2) The "drinking was a cause-in-fact of [the] accident." Myres v. Nunsett, 511 So.2d 1287, 1289 (La.App. 2d Cir. 1987), and
(3) The "injuries" were caused by a "wanton or reckless disregard for the rights and safety of others." La.C.C. art. 2315.4.
In the instant case, the parties stipulated that Ms. Gottfried's blood alcohol level immediately after the accident was .227. Based on the facts of the case, the trial judge apparently found that the first two elements were present in the instant case. We find no manifest error in the trial court's implied conclusion that the defendant in the instant case had consumed "a sufficient quantity of intoxicants to make her lose normal control of her mental and physical facilities" and that the defendant's "drinking was a cause-in-fact of the accident." Therefore, the sole issue before this court is whether the trial court was correct in finding that "more facts [were] needed" before he could determine whether the accident was caused by a "wanton and reckless disregard for the safety of others."

"Wanton and Reckless Disregard for Rights and Safety of Others"
Although "wanton and reckless disregard for the rights and safety of others" and similar terms are used in several codal articles, the concept is not defined in the Louisiana Civil Code. However, the term "reckless disregard of safety" is defined by the Restatement (2d) Torts, Ch. 19, Sec. 500 (1965) as follows:
The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.
Id. at 587. (Emphasis added.)
The following discussion of "willful, wanton and reckless" is found in Prosser and Keeton on Torts, Ch. 5, Sec. 34 (1984):
The usual meaning assigned to "willful," "wanton," or "reckless" ... is that the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences. Since, however, it is almost never admitted, and can be proved only by the conduct and the circumstances, an objective standard must of necessity in practice be applied. The "willful" requirement, therefore, breaks down and receives at best lip service, where it is clear from the facts that the defendant, whatever his state of mind, has proceeded in disregard of a high and excessive degree of danger, either known to him or apparent to a reasonable person in his position.
The result is that "willful," "wanton," or "reckless" conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent. As a result there is often no clear distinction at all between such conduct and "gross" negligence, and the two have tended to merge and take on the same meaning, of an aggravated form of negligence, differing in quality rather than in degree from ordinary lack of care. It is at least clear, however, that such aggravated negligence must be more than any mere mistake resulting from inexperience, excitement, *1181 or confusion, and more than mere thoughtlessness or inadvertence, or simple inattention, even perhaps to the extent of falling asleep at the wheel of an automobile, or even of an intentional omission to perform a statutory duty, except in those cases where a reasonable person in the actor's place would have been aware of the great danger, and proceeding in the face of it is so entirely unreasonable as to amount to aggravated negligence.
Id. at 213-14. For clarification of the concept, as it has been applied in Louisiana, we must look to jurisprudence. See Comment, Reflections on Willful, Wanton, Reckless, and Gross Negligence, 48 La.L.Rev. 1383 (1988).
One discussion of the level of conduct required which has been helpful to other courts can be found in Cates v. Beauregard Electric Cooperative, Inc., 316 So.2d 907, 916 (La.App. 3d Cir.1975), aff'd, 328 So.2d 367 (La.1976), cert. denied, 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976), in which the court stated as follows:
The terms "willful", "wanton", and "reckless" have been applied to that degree of fault which lies between intent to do wrong, and the mere reasonable risk of harm involved in ordinary negligence. These terms apply to conduct which is still merely negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if harm was intended. The usual meaning assigned to do [sic] the terms is that the actor has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow.
316 So.2d at 916.
In a different context, this court relied on the Cates definition to determine whether a plaintiff should be allowed to proceed under another exemplary damages article, La.C.C. art. 2315.3, which requires a "wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances." In Griffin v. Tenneco Oil Co., 531 So.2d 498, 500 (La.App. 4th Cir.), writ denied, 534 So.2d 430 (La.1988), this court declared that:
The statute's reference to the public safety is in the context of a general state of mind which the plaintiff must prove in order to recover. The statute does not require that the plaintiff prove some specific conduct on defendant's part which constitutes wanton or reckless disregard for his safety.
531 So.2d at 500. After applying the Cates, supra, definition, this court in Griffin outlined plaintiff's burden of proof as follows: "plaintiff must show that [defendant's] alleged acts and omissions of negligence were accompanied by a conscious indifference to consequences amounting almost to a willingness that harm to the public safety would follow." Id. at 501.
The third circuit has also addressed the recklessness standard in Sayes v. Pilgrim Manor Nursing Home, Inc., 536 So.2d 705 (La.App. 3d Cir.1988), in which the court had to determine whether the defendant's actions were reckless or wanton, as an exception to the professional rescuers rule. Recklessness or wanton negligence was defined as "the heedless disregard for others' rights with the consciousness that the act or omission to act may result in injury to another." Id. at 711. Thereafter, the court concluded that the defendant's failure to exert control over a patient "amounted to reckless and wanton negligence." Id. at 712.
Thus, the foregoing cases give some indication of what actions can be considered wanton and reckless. Typically, the necessary level of conduct is somewhere between an intent to do wrong and mere negligence. Actions knowingly taken, or not taken, which would likely cause injury to another fall within this category. No specific conduct by the actor is necessary, but a conscious indifference to consequences must be shown. If the actor *1182 knows, or should know, that his actions will cause harm, and proceeds anyway, then there is a conscious indifference to consequences, which constitutes a wanton or reckless disregard for the rights and safety of others.
As to the level of conduct necessary under article 2315.4, a survey of cases upholding exemplary damage awards provides some guidance. For example, in Sharp, supra, 555 So.2d at 1361-62, the defendant rear-ended plaintiff's vehicle at a red light. Defendant "failed to see [plaintiff's] automobile, because he was trying to insert a tape in his cassette deck and his blood alcohol concentration was .17%." Id. at 1362. A rear-end accident was also involved in McDaniel v. DeJean, 556 So.2d 1336 (La.App. 3d Cir.1990). The McDaniel court determined that "given [defendant's] fatigued state, he acted with a wanton or reckless disregard for the rights and safety of others by getting intoxicated and driving on the public highway and roads." In Bauer v. White, 532 So.2d 506, 507 (La. App. 1st Cir.1988), the defendant rear-ended plaintiff at a stop sign, backed up and struck another car, then went forward and struck a tree. The Bauer court did not discuss whether defendant's actions were reckless or wanton, but declared "[i]t is undisputed that article 2315.4 applies to the defendant." Id. A different scenario was the cause of the accident in Falgout, supra, wherein the defendant crossed the center line and collided with plaintiff's vehicle causing only property damage. Furthermore, in Levet, supra, "the jury concluded that [defendant's] actions of driving in the wrong lane of traffic and of disregarding the stop sign and light constituted a `wanton or reckless disregard for the rights and safety of others.'" 514 So.2d at 159.
Additionally, several courts have, in dicta, indicated that a presumption of recklessness can be made when the intoxication of the defendant is the cause-in-fact of the accident. The Creech, supra, court professed that "[c]ourts ... have recognized that a substantial distinction exists in degree of culpability between intentional acts and wantonly reckless acts such as drunk driving." 516 So.2d at 1173. Creech involved a head-on collision. Furthermore, in Myres, supra, the court stated as follows:
A number of other states take the position that operating a motor vehicle on the public road after voluntary intoxication in and of itself constitutes sufficient reckless disregard to warrant an award of exemplary damages. Our codal article requires an additional showing that the accident resulting in injury was caused by the voluntary intoxication of a defendant.
511 So.2d at 1289. Since the plaintiff in Myres was unable to show that alcohol consumption was the cause of the accident, exemplary damages were not awarded. Finally, the court in Demarest v. Progressive American Insurance Co., 552 So.2d 1329 (La.App. 5th Cir.1989) determined that defendant's "consumption of alcohol was a cause in fact of the accident and constituted a wanton and reckless disregard of the rights and safety of others." Id. at 1334.
The focus of the above article 2315.4 cases has been either the insurance coverage issue or whether the accident was caused by defendant's intoxication. Apparently, in several of the circuit courts of this state, the "wanton and reckless" element is considered a given if the defendant's intoxication caused the accident. Therefore, in most circuits, only two issues must be proven since the intoxication element and the "wanton and reckless" element are proven by the same facts. However, in this circuit, evidence of a certain blood alcohol level is generally considered insufficient even to prove simple negligence, which involves a much lesser burden of proof than that required to prove "wanton and reckless." See Shroyer v. Grush, 555 So.2d 534, 542 (La.App. 4th Cir.1989), writ denied 559 So.2d 140 (La.1990); Whittington v. American Oil Co., 508 So.2d 180, 186 (La.App. 4th Cir.), writ denied 512 So.2d 436 (La.1987). Thus, we believe that both intoxication and "wanton and reckless disregard for the rights and safety of others" must be proven before a plaintiff is entitled to recovery of exemplary damages under La.C.C. art. 2315.4.
*1183 Because this case was tried on briefs, no record evidence exists to indicate exactly how the accident occurred, except the fact that Ms. Gottfried was driving while she had a blood alcohol level of .227 and the fact that she hit two parked cars. In the cases cited above, proof of some specific actionsuch as inserting a tape in a cassette deck, driving in a "fatigued state," or erratic driving patternshas been cited as evidence of "wanton and reckless disregard of the rights and safety of others." However, the statute in question in the instant case does not require proof of "wanton and reckless conduct" on the part of the defendant. The element necessary to recovery under La.C.C. art. 2315.4 is "wanton and reckless disregard for the rights and safety of others." Thus, no evidence of a specific action on the part of the defendant is necessary. In order to prove "wanton and reckless disregard," the plaintiff is required only to prove a "general state of mind" and a "conscious indifference to consequences." Griffin, supra, 531 So.2d at 501.
Examination of La.C.C. art. 2315.4 in light of Louisiana Revised Statutes, Title 14, which contains the criminal laws in this state, reveals that the legislature has repeatedly evidenced an intention to discourage drunk driving. For instance, LSA-R.S. 14:98 makes it a crime, punishable by fine and/or imprisonment, to drive while "under the influence of alcohol." Evidence that a driver had a blood alcohol level of .10 or more is sufficient to establish an irrebutable presumption that he was "under the influence of alcohol." Further evidence of the legislature's intention to discourage drunk driving is found in the 1984 amendments to the criminal law, which added LSA-R.S. 14:32.1, relative to vehicular homicide, and LSA-R.S. 14:39.1, relative to vehicular negligent injuring. The triggering element for both of those statutes is evidence that the driver was "under the influence of alcohol;" additionally, both statutes recognize the presumption that a person is under the influence when his blood alcohol level measures .10 or above. La.C.C. art. 2315.4 was also adopted during the 1984 session of the legislature. Thus, La.C.C. art. 2315.4 must be interpreted to give effect to the legislature's intentions.
In light of the broad efforts to educate the public concerning drinking and driving, it is common knowledge that even a minimal amount of alcohol may cause a functional impairment. Everyone knows that an intoxicated motorist is unable to react quickly, or, in some instances, to even retain control of the vehicle. Thus, when a person who has been drinking drives, he knows that the odds of being involved in a serious accident increase with each and every drink. A motorist who has consumed even a small amount of alcohol is aware that his alcohol consumption might affect his driving ability. Thus, he gets behind the wheel only at the risk that he might cause an accident. Therefore, the act of driving after consumption of a couple of beers, or after participating in a cocktail hour, not only exposes a driver to possible criminal consequences, but also may expose him to civil liability for negligence, provided there is proof of the effect of the alcohol on that particular driver. See Shroyer, supra.
However, in the instant case, we are not dealing with a driver who "had a few beers" or participated in a "cocktail hour." The defendant in this case unquestionably had a blood alcohol level of .227 immediately after the accident occurred. It is well established that the statutory presumption of intoxication of .10 in criminal cases does not apply to civil cases. LSA-R.S. 32:662; Prestenbach v. Sentry Ins. Co., 340 So.2d 1331, 1334 (La.1977); Shroyer, supra. However, we have no trouble concluding that a person with a blood alcohol level of .227 should not be driving. Further, because the effect of alcohol on a person's driving ability is common knowledge, it is obvious that a person who had a .227 blood alcohol level had the state of mind sufficient to constitute "wanton and reckless disregard of the rights and safety of others." Certainly, a person who drives an automobile after consuming enough alcohol to reach that level "know[s] or ha[s] reason to know of facts which would lead a reasonable man to realize, not only that his *1184 conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." Restatement (2d) of Torts, Sec. 500. (Emphasis added.) With this knowledge of the increased likelihood of an accident, the defendant exhibited "a conscious indifference to the consequences" of her actions. Griffin, supra, 531 So.2d at 501. We find that the injuries in the instant case were caused by a "wanton and reckless disregard for the rights and safety of others." Accordingly, an award of exemplary damages is appropriate under the facts of the instant case. Since no evidence of specific conduct is necessary to prove the "wanton and reckless" element, the trial judge was manifestly erroneous in his conclusion that "more facts are needed" to establish this element. Thus, his judgment denying the plaintiffs recovery of exemplary damages under La.C.C. art. 2315.4 is reversed.
Under the circumstances of the instant case, the evidence used to prove "wanton and reckless disregard for the rights and safety of others" is essentially the same as that used to prove intoxication. Nevertheless, the two elements are distinctly different and should be treated as such; i.e., the plaintiff must be required to prove both elements in order to prove entitlement to exemplary damages under La. C.C. art. 2315.4. In some cases, different evidence will be necessary to prove the two elements. Simple proof that a person was driving under the influence of alcohol and that he might have been impaired, by itself, will not always be sufficient to establish the "wanton and reckless" element. The facts and circumstances of each caseincluding, but not limited to, the defendant's blood alcohol level, evidence of the effect of the alcohol on the specific defendant, and the consequences of the alcohol consumptionmust be considered in determining the necessary "wanton and reckless" element. However, in this case, we believe that the evidence that the defendant's blood alcohol level was .227 is sufficient to prove the plaintiff's case.
Damages
Plaintiffs have already received payment for their property damage. However, they did suffer some additional inconvenience, such as the necessity of finding alternate means of transportation. Although an exemplary award is not governed by the amount of actual damages sustained, an award of $2,500 exemplary damages for each plaintiff is adequate in this instance.
Conclusion
For the above and foregoing reasons, the decision of the trial court dismissing plaintiffs' claims against defendant, State Farm Mutual Insurance Company is reversed, and Edward Bourgeois and Alfred Smith are awarded exemplary damages of $2,500 each, plus interest and costs.
REVERSED AND RENDERED.