628 So.2d 81 (1993)
Verbon HILL, Plaintiff-Appellee,
v.
Reginald C. SAMPSON and Automotive Casualty Insurance Company, Defendants-Appellants.
No. 24787-CA.
Court of Appeal of Louisiana, Second Circuit.
November 5, 1993.
*82 Hudson, Potts & Bernstein by Brian P. Bowes, Monroe, for defendants-appellants.
C. Daniel Street, Monroe, for plaintiff-appellee.
Before SEXTON, NORRIS and HIGHTOWER, JJ.
SEXTON, Judge.
Defendants, Automotive Casualty Insurance Company and its insured, Reginald Sampson, suspensively appealed the district court judgment of June 15, 1992, in favor of plaintiff, Verbon Hill, in the total sum of $8,756.86 with legal interest and costs. This award consists of $3,000 in punitive or exemplary damages under LSA-C.C. art. 2315.4. Automotive Casualty was placed in liquidation by order signed January 20, 1993. LIGA was substituted as a party defendant thereafter. We amend, and affirm as amended.
On July 6, 1991, defendant Sampson rear-ended plaintiff Hill in Monroe, Louisiana. According to both Hill and the investigating officer, Sampson was unsteady on his feet, smelled of alcohol, belligerent, had red, watery eyes, had urinated on himself and had slurred speech. In short, Sampson evidenced many characteristics of being intoxicated. Sampson refused to cooperate in a field sobriety test and would not blow hard enough into the breathalyzer to enable the tester to obtain a reading. Sampson was arrested for driving while intoxicated and subsequently pled guilty to that charge.
The day after the accident, Hill went to Dr. George Ronald Woods with complaints about his back, shoulder, and headaches. Hill also informed Dr. Woods that he had injured these areas in a prior car accident, but had since recovered. Hill was treated for a mild to moderate neck and back strain and underwent extensive physical therapy for two weeks. Dr. Woods released Hill upon completion of the physical therapy treatments. Hill later testified at trial to his greatly improved condition, but he also stated that he still suffered some residual effects of the accident.
At trial, Sampson admitted having two stiff drinks at Cuco's, but claimed his intoxicated condition was not the cause of the accident. Rather, Sampson claimed the accident occurred because he was changing a cassette tape in his car stereo. Sampson also denied that alcohol even affected his driving ability. *83 Furthermore, he denied that a field sobriety test was attempted, that he was staggering, or that he had urinated on himself.
The trial court found Sampson to be 100 percent at fault and awarded Hill $3,000.00 in general damages, $2,279.26 in special medical damages, $87.00 in lost wages, $390.60 for rental car expense, and $3,000.00 in punitive damages. The trial court supported the award of punitive damages by its finding that Sampson was clearly intoxicated at the time of the accident and that his intoxication was a cause of the accident. Moreover, the trial court found Sampson acted in wanton disregard of the rights and safety of others.
Defendants now appeal the trial court's judgment except for the awards for special medical damages and for lost wages, asserting five assignments of error.
First, defendants contend the trial judge abused his discretion by awarding $3,000 in general damages. Recently, the Louisiana Supreme Court restated the law concerning the modification of a general damage award by an appellate court.
In Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), the court stated:
The standard for appellate review of general damage awards is difficult to express and is necessarily nonspecific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963), through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck [v. Stevens, 373 So.2d 498 (La.1979)] to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
In the present case, Hill underwent extensive physical therapy every day for two straight weeks. While the therapy helped, Hill was not significantly better until one and a half months after the accident. As of the time of trial, Hill asserted he was still experiencing some pain as a result of the accident.
Considering these factors, we cannot say the trial court abused its wide discretion in fixing the general damage award at $3,000.
Next, defendants contend the trial judge committed manifest error by awarding punitive damages. They assert no competent evidence was presented at trial to show Sampson was intoxicated, and also that any possible intoxication was the cause of the accident.
LSA-C.C. art. 2315.4 provides as follows:
In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries.
To prevail on a claim for punitive damages under LSA-C.C. art. 2315.4, the jurisprudence requires a plaintiff to prove the following elements:
(1) The defendant was intoxicated or had "a sufficient quantity of intoxicants to make him lose normal control of his mental and physical faculties." Levet v. Calais & Sons, Inc., 514 So.2d 153, 159 (La.App. 5th Cir.1987),
(2) The "drinking was a cause-in-fact of [the] accident." Myres v. Nunsett, 511 So.2d 1287, 1289 (La.App. 2d Cir.1987), and
(3) The "injuries" were caused by a "wanton or reckless disregard for the rights and safety of others." La.C.C. art. 2315.4.
Bourgeois v. State Farm Mutual Automobile Insurance Company, 562 So.2d 1177, 1180 (La.App. 4th Cir.), writ denied, 567 So.2d 611 (La.1990).
*84 The trial court found Sampson was intoxicated, his intoxication was a cause in fact of the accident, and the injuries were caused by wanton or reckless disregard for the rights and safety of others. As a result, the court awarded punitive damages.
At trial, Sampson admitted to having consumed two Long Island Iced Teas prior to the accident. Both Hill and the investigating officer, Officer Jenkins, testified as to Sampson's condition at the scene of the accident. Hill testified Sampson was rebellious, had an odor of alcohol, slurred speech and was unable to talk rationally. Officer Jenkins testified Sampson was agitated, had blood shot eyes, slurred speech, was staggering and had an odor of alcohol on his breath. He also testified Sampson had urinated on himself and refused to cooperate with a field sobriety test. As a result, Sampson was arrested for driving while intoxicated, a charge to which he ultimately pled guilty. The trial court was not clearly wrong in finding Sampson was intoxicated based on the evidence presented at trial.
Defendants' next contention is that the plaintiff failed to prove by clear and convincing evidence that the defendant Sampson's intoxication was a cause in fact of the accident. In contending that plaintiff's burden is that of clear and convincing evidence, defendants cite Judge Lanier's dissent in Sharp v. Daigre, 545 So.2d 1063, 1069 (La.App. 1st Cir.1989) (J. Lanier dissenting), affirmed, 555 So.2d 1361 (La.1990), and a scholarly comment therein.
While this argument has theoretical appeal, we are not inclined by these judicial means to establish "clear and convincing evidence" as the standard of proof for exemplary damages under LSA-C.C. art. 2315.4. In our view, had the legislature intended a higher standard of proof than that of a preponderance of the evidence, it would have clearly so indicated, as it has done on any number of other occasions. Indeed, it may well be that the instant evidence of Sampson's intoxication is clear and convincing, but we do not decide that question for the reasons we have indicated.
As to the final element, the trial court found Sampson's fatigued state, voluntary consumption of alcoholic beverages and inability to function normally, followed by driving on public roads, were actions in wanton or reckless disregard for the rights and safety of others.
To prove injuries are caused by a defendant's actions in wanton or reckless disregard for the rights and safety of others, no evidence of a specific action on defendant's part is necessary. Plaintiff must only prove a general state of mind and a conscious indifference to the consequences. A conscious indifference to the consequences can be found where the actor knows or should know his actions will cause harm and proceeds anyway. The decision whether a defendant acted with a conscious indifference to the consequences is to be determined by the facts and circumstances of each case including, but not limited to, blood alcohol level, evidence of the effect of alcohol on the specific defendant, and the consequences of alcohol consumption. Bourgeois, supra.
Sampson refused to comply with an attempted field sobriety test and would not blow hard enough to enable the officers to get any blood alcohol level reading. Thus, in this case, there is no blood alcohol level results to consider. However, the record contains ample evidence of the effect of alcohol on Sampson and the consequences of his consumption thereof. The record therefore supports the trial court's finding that Sampson acted with a conscious indifference of the consequences of his actions which were in wanton or reckless disregard of the rights and safety of others. Accordingly, defendant's argument here is without merit.
Next, we consider defendants' assignment of error that the trial court relied on inadmissible evidence in determining the liability of the defendant Sampson. The facts giving rise to this contention are as follows. At trial, plaintiff's counsel began to lead his client through a course of testimony concerning Sampson's symptoms of intoxication, i.e., slurred speech, coherence, and irrationality. Upon successful objection by the defendant as to the leading nature of these questions, the questions were not asked again or rephrased. *85 The defense complains through this assignment that the trial court nevertheless relied on this testimony which it had excluded.
In this regard, we observe that Officer Jenkins gave nearly the same testimony regarding Sampson's condition at the scene as that of Hill. In addition, the testimony complained of was elicited prior to the objection. Most importantly, however, the defense does not contest the defendant's negligence. The defendant rear-ended the plaintiff and is clearly liable. Intoxication, in the context of this accident, bears only on the question of exemplary damages. Thus, as presented, we do not discern the import of this defense argument. We find it without merit.
Defendants further contend the trial judge committed manifest error by awarding rental expenses for a rental car when no competent evidence establishing payment of these expenses or their reasonableness was introduced at trial.
Both Hill and his mother, Alice Hill, identified the bill from the rental company which was admitted into evidence over the objection of defendants. Alice Hill's signature was on the bill because she was the actual renter of the substitute car. Alice Hill rented the car for her son because the rental company required a major credit card for the rental and Verbon Hill did not have one. This evidence indicates the bill was paid by Alice Hill on behalf of her son. Hill only seeks the balance due after the partial payment by Automotive Casualty.
An automobile owner whose car is damaged in a collision is entitled to recover the cost of renting a car for the time it takes to have his damaged car repaired. Rivere v. Bellefonte Insurance Co., 388 So.2d 75 (La. App. 1st Cir.), writ denied, 391 So.2d 455 (La.1980). Receipts of expenses incurred are admissible into evidence and may be used to support an award of damages when identified by testimony that they were paid and represented costs incurred because of the tortfeasor's act. Such identified receipts may be sufficient proof of the claim in the absence of evidence to the contrary. Teague v. Barnes, 519 So.2d 817 (La.App. 5th Cir.1988). We find the trial court was not manifestly wrong in finding the rental expense had been established by competent evidence.
Defendants also claim the rental expense was unreasonable. To the contrary, Hill only rented the car for 15 days, whereas the actual time the damaged car was being repaired was three weeks. While Hill may not have "shopped around" for the lowest rate, there is no evidence that indicates the rate incurred by Hill was unreasonable or even above the average rental rates in the area. We find the trial court did not commit manifest error in concluding the rental expense was reasonable.
Finally, substituted defendant LIGA contends it is not liable for any interest and costs associated with the trial court's award, citing LSA-R.S. 22:1379(3)(d). We disagree.
LSA-R.S. 22:1379(3)(d) provides a nonexclusive list of items that are not included in a covered claim. Both court costs and interest associated with a pre-insolvency obligation of an insolvent insurer are included therein and thus are not obligations of LIGA. However, LSA-R.S. 22:1382 A(1)(b) clearly dictates the liability of LIGA for post-insolvency court costs. We find no mention of post-insolvency interest in these statutes.
Reading the pertinent statutes in pari materia, we conclude that LIGA is responsible for both post-insolvency court costs and interest.
We therefore amend the trial court judgment of July 13, 1992, to substitute LIGA for Automobile Casualty Insurance Company and to limit LIGA's responsibility for legal interest and court costs to those incurred subsequent to the legal insolvency of Automobile Casualty Insurance Company and affirm the judgment of July 13, 1992, as amended, at appellants' costs.
AFFIRMED AS AMENDED.