frDALEY, Judge.
This is a second appeal in this ease which arises from an automobile accident in which the plaintiff suffered personal injuries. For reasons assigned, we affirm the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY

This matter arises out of an automobile accident which occurred on July 21, 1994 at approximately midnight on the elevated portion of the Westbank Expressway. The accident occurred when the plaintiff was rear-ended by a ear driven by the defendant, Glenn Duffard, and insured by Motors Insurance Corporation.[1] Following a trial on the merits, the jury awarded plaintiff $54,000.00 in past medical expenses, 13$!6,000.00 for future medical expenses, $51,000.00 for past and future physical pain and suffering, and $29,000.00 for past and future loss wages. The jury declined to-.award the plaintiff damages for mental anguish. The jury found that Mr. Duffard was intoxicated at the time of the accident, but found the intoxication was not a cause of the accident. The jury further found the plaintiff to be 25 percent comparatively negligent in causing the accident.
The first appeal was filed by the plaintiff from this jury verdict. This Court held the jury was manifestly erroneous in failing to find Mr. Duffard 100 percent at fault, and held Mr. Duffard was the sole cause of the accident. Selvage v. Robert Levis Chevrolet, Inc., 96-1035 (La.App. 5th Cir. 7/29/97), 698 So.2d 442. This Court also found the jury erred in failing to award plaintiff damages for past and future mental anguish and exemplary damages due to the fact that Mr. Duffard’s intoxication caused or contributed to the accident. The case was remanded to the trial court for a determination of damages on these issues.
On remand, the trial judge awarded plaintiff $100,000.00 for past and future mental anguish, including embarrassment from scar *1090 ring and exemplary damages in the amount of $150,000.00. Following the denial of a Motion for New Trial, the defendants appealed.
Testimony at trial revealed that Mr. Duf-fard was traveling approximately 60 miles per hour when he struck plaintiffs car in the center lane of the three lane highway. There were no other cars in the vicinity at the time of the accident. The impact caused plaintiffs car to strike the right concrete guardrail. Her car then spun across the highway, striking the left guardrail, coming to rest with the front tires resting on the guardrail. Plaintiff was wearing her seatbelt at the time of impact, however, her seat broke causing her to be thrown about the car. She did not lose | ¿consciousness. Plaintiff testified that she smelled gasoline when her car finally came to rest and she feared the car would explode. Due to the damage sustained by her vehicle, she had to be extracted from the car.
Plaintiff was taken by ambulance to Charity Hospital, where she was treated for severe bruising throughout her body. She was prescribed pain medication and told to see a physician for follow up care. After going home, plaintiff experienced such severe pain that her parents took her to the emergency room at West Jefferson Medical Center. The medical records from that visit indicate that plaintiff had multiple severe contusions and acute cervical and lumbar sprain. She was administered additional pain medication and instructed to seek follow up medical care.
At trial, testimony was received from several of the plaintiffs treating physicians. Dr. Sudderth, an expert in general practice, testified that he first examined plaintiff on July 27, 1994. He described severe multiple contusions on her left forearm, right elbow and left forehead. He noted that she complained of left sided headaches due to trauma sustained on the left side of her head. Dr. Sudderth explained that his physical exam indicated that Ms. Selvage had muscle spasms in her cervical and lumbar areas which was indicative to injuries in these areas. He prescribed physical therapy, pain medication and muscle relaxants. Over the course of Dr. Sudderth’s treatment of plaintiff, he referred her to various specialists for treatment of her numerous injuries, which included bilateral carpal tunnel syndrome, bilateral thoracic outlet syndrome, severe post traumatic headaches, and post traumatic stress syndrome. He last examined plaintiff in April 1996, at which time she complained of neck and back pain, and headaches. Dr. Sudderth concluded that plaintiff is 25 percent disabled, has a poor prognosis, and in his opinion, she will “continue to have problems.”
IsDr. Peter Skov, an ophthalmologist, testified that he examined plaintiff on July 28, 1994, at which time she complained of left sided headaches and seeing spots and flashing lights in front of her eye. Ms. Selvage related to him that she hit her head in an auto accident. His exam showed a hemorrhage in the outer side of her left eye. He explained that plaintiffs visual complaints were being caused by blood floating around the inside of her eyeball. Dr. Skov examined plaintiff periodically to monitor this injury because it could possibly damage her retina which would affect her eye sight. Dr. Skov opined that plaintiff should continue to have her retina examined every four to five months over the next few years.
Dr. Mohnot, a neurologist, testified that plaintiff was referred to him for treatment of headaches. He first examined plaintiff on August 24, 1994, at which time she stated that she had hit her head in an auto accident and then had several small bumps in different places on her head. Her headaches were described as being on the left side of her head and were accompanied by nausea, dizziness, and visual disturbances. Dr. Mohnot noted that plaintiff had a prior history of headaches which were less frequent, less intense and not accompanied by visual disturbances. Over the course of his treatment of plaintiff, she continued to complain of severe headaches which occurred on a daily basis and were unrelieved by various medications. Dr. Mohnot diagnosed plaintiff as suffering from severe post traumatic headaches and opined that it was likely that these headaches would continue in the future.
*1091 Dr. Fleming, an orthopedic surgeon, testified that plaintiff was referred to him for pain in her neck, low back, and arms. He first examined plaintiff on January 9, 1995 at which time he noted decreased range of motion in her spine. Dr. Fleming ordered that plaintiff have nerve conduction studies performed which were indicative of right and left carpal syndrome. Dr. Fleming also noted that plaintiffs exam was |6indicative of thoracic outlet syndrome and she was referred to another physician for treatment of that condition. Dr. Fleming performed surgery on Ms. Selvage for treatment of her right carpal tunnel syndrome in June 1995. Following that surgery, she continued to complain of pain in both hands. He performed surgery on Ms. Selvage for treatment of left carpal tunnel syndrome in December 1995, after which her complaints of pain in the left hand ceased. Over the course of Dr. Fleming’s treatment of plaintiff, she complained of pain in the low back and right scapular region. She was administered steroid and analgesic injections in these areas on numerous occasions, resulting in temporary pain relief. Dr. Fleming last examined plaintiff in April 1996. She continued to complain of pain in her right scapula, right hand, and low back.
Dr. Francis Alessi, a thoracic surgeon, treated plaintiff for thoracic outlet syndrome. Dr. Alessi first examined plaintiff on March 27,1995. He noted on that visit that she had assumed a “protective posture” because she was in chronic pain. He explained that the nerves in her neck and brachial plexus area were stretched and injured due to the violent manner in which she was thrown about during the accident. This caused scar tissue to form in the area of the brachial plexus which compressed the nerves, causing her pain and altered sensation in her arms. He diagnosed this condition as thoracic outlet syndrome. Dr. Alessi performed surgery to relieve the right thoracic outlet syndrome in June 1995, and performed surgery on the left side in March 1996. He explained that surgery for this syndrome consists of making a four inch incision under the arm, removing the first rib and a portion of the scalene muscle and scraping away all scar tissue in the area. Although Dr. Fleming noted that Ms. Selvage’s symptoms from the thoracic outlet syndrome were improved following the surgeries, he noted that she continued to complain of pain. Dr. Alessi opined that |7these complaints were caused by an inflammation of her connective tissue, a condition known as myofacitis. He opined that the probability of recurrence of thoracic outlet syndrome in Ms. Selvage was low, but the myofacitis could last for years. Dr. Alessi did not feel that Ms. Selvage could return to her previous job at this time and whether or not she could return to her previous type of work depends on the condition of her hand and wrist.
Dr. Jordan, a clinical psychologist, first treated plaintiff on August 8, 1994, at which time she complained of pain, nightmares, insomnia, and driving phobia. He performed a full battery of testing on her, which led to the diagnosis of post traumatic stress syndrome. Dr. Jordan explained that a key feature of this disorder is that the individual cannot forget the traumatic experience, and they think about it all day and dream about it at night. This condition resulted from Ms. Selvage’s close call with death in this auto accident. Dr. Jordan prescribed antidepressants, behavioral therapy and cognitive therapy. Ms. Selvage made progress in the beginning of treatment, but her treatment was interrupted by a fire at Dr. Jordan’s office. Although Ms. Selvage sought treatment from another therapist, when she resumed treatment with Dr. Jordan, she had regressed and become depressed. Dr. Jordan last examined the plaintiff in March 1996, at which time she continued to be depressed and was unable to drive. Dr. Jordan explained that she continues to suffer from post traumatic stress syndrome and her prognosis is guarded. He opined that if she recovers from her physical injuries, and is able to return to work, her psychological condition should improve, however, if she does not recover from a medical standpoint, her psychological recovery would be limited.
The plaintiff testified that at the time of this accident she was attending nursing school at a vocational school and was working approximately 36 hours per week at the IgFinish Line. She has been unable to return to school or work since the accident due to *1092 her constant pain and inability to concentrate. Ms. Selvage explained that she had no medical insurance at the time of the accident. Due to her inability to work, she is unable to pay her bills and is in debt. She testified that she continues to experience a nightmare in which she is in an accident and her car goes over the side of the bridge, and explodes, killing her. Ms. Selvage stated that the symptoms of carpal tunnel syndrome in her left hand were resolved by the surgery, however, she still has tingling, numbness, and difficulty grasping things in her right hand. She continues to have pain in the right scapula, low back pain, and severe headaches. She experiences some relief of the back and scapula pain from the injections into these areas. Pictures were introduced into evidence depicting the four to five inch sears under both of plaintiffs arms and the scars on her wrists.
Testimony was also received from several members of the plaintiffs family who described the changes in plaintiff since the accident. Prior to the accident, Ms. Selvage was described as being independent, friendly and outgoing. They testified that the injuries she sustained in this accident have had a profound effect on her life. She is depressed and in constant pain, and no longer enjoys activities such as fishing, writing poetry, or spending time with children in the family.
Concerning Mr. Duffard’s intoxication, Dr. Francis Regan, a toxicologist, testified that breathalyzer results indicated Mr. Duffard had a blood alcohol level of .212% approximately one hour following the accident. Dr. Regan stated that an individual with this blood alcohol level would be significantly impaired and would not be able to operate a motor vehicle effectively. He opined that in order for Mr. Duffard’s blood alcohol to reach this level, Mr. Duffard must have consumed much more alcohol than he admitted to ingesting.

J¿DISCUSSION

On appeal, the defendants argue that the trial judge abused his discretion in awarding plaintiff $100,000.00 for mental anguish, including embarrassment due to scarring and $150,000.00 in exemplary damages. Defendants compare these awards to the amounts awarded by the jury and argue that the jurors who observed these scars did not think they were severe enough to merit any award for mental anguish or embarrassment.[2] They suggest an award ranging from $5,000.00 to $15,000 for mental anguish including scarring in this case. Defendants further argue the exemplary damage award is excessive, attacking the testimony of Dr. Regan and claiming that a blood alcohol level of .212% could have different effects on different people.
In reviewing a general damage award on appeal, the function of the appellate court to review the exercise of discretion by the trial court, not to determine what the appellate court considers an appropriate award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
On appeal, the initial inquiry is whether the amount awarded by the trial court is a clear abuse of the much discretion afforded the trial court, given the particular injuries and their effects on the particular injured person. Id. Only when the award is, in either direction, beyond the amount which a reasonable trier of fact could assess for the effects on the particular plaintiff given the particular circumstances, that the appellate court should disturb the award. Id. at 1261.
| ipln the case before us, Ms. Selvage was a 21 year old nursing student at the time of the accident. She was also working and actively participated in various social events with her family and friends. Ms. Selvage was independent and well adjusted. Following the accident she has been unable to return to school or work. She suffers from recurring nightmares, depression, and a fear of driving and continues to require the care of a psychologist. The testimony established that following the accident, she has been unable to participate in various family activities. At the time of trial, which was nearly two years after the accident, plaintiff had just recently undergone her fourth surgical *1093 procedure for injuries, which the medical testimony established were sustained in this accident. Ms. Selvage was left with four scars on her body, each measuring approximately four inches in length.
The trial court’s award of $100,000.00 for mental anguish, including embarrassment from scarring, along with the jury’s award of $51,000.00 for pain and suffering increases the total general damage award in this case to $151,000.00. Under the facts and circumstances of this case, given the standard of review mandated by the Supreme Court, we do not find the trial court’s award to be an abuse of discretion. See Palmer v. K-Mart Corp., 94 1051 (La.App. 1st Cir. 4/7/95), 653 So.2d 1334.[3]
| nThe defendants also contend the $150,000.00 award for exemplary damages is an abuse of discretion. The defendants do not deny that Mr. Duffard was intoxicated at the time of the accident, they simply contend the award is too high.
A review of the jurisprudence indicates that there is no specific formula in awarding exemplary damages. Exemplary damages are authorized when the following elements are proved:
1. The defendant was intoxicated or had a sufficient quantity of intoxicants to make him lose normal control of his mental and physical facilities;
2. The drinking was a cause-in-faet of the accident;
3. The injures were caused by a wanton and reckless disregard for the rights and safety of others.
Minvielle v. Lewis, 610 So.2d 942 (La.App. 1st Cir.1992); C.C. art. 2315.4.
The record is unclear as to the amount of alcohol ingested by Mr. Duffard. The record is clear, however, that he was significantly impaired at the time of the accident. State Trooper Hanann, who performed the breathalyzer test at the accident, testified that Mr. Duffard had a strong odor of alcohol on his breath, slurred speech, and poor balance. The result of the test revealed Mr. Duffard had a blood alcohol level .212%, over twice the amount needed for a criminal conviction of driving while intoxicated. The plaintiffs expert pathologist testified that a blood alcohol level of .212% would render Mr. Duffard unable to effectively operate a motor vehicle.
The trial court has much discretion in setting the amount of exemplary damage awards. Brumfield v. Guilmino, 93 0366 (La.App. 1st Cir. 3/11/94), 633 So.2d 903, writ denied, 94-0806 (La.5/6/94), 637 So.2d 1056. The amount of exemplary damage awards affirmed by our appellate courts ranges from roughly one half of the amount awarded in general damages to several times the amount awarded in general damages. See Owens v. Anderson, 93-1566 (La.App. 4th Cir. 1/27/94), 631 So.2d 1313;_|12Angeron v. Martin, 93 2381 (La.App. 1st Cir. 12/22/94), 649 So.2d 40. We find no abuse of discretion by the trial court in this case in which he rendered an exemplary damage award equal to the general damage award. See Hill v. Sampson, 628 So.2d 81 (La.App. 2nd Cir.1993); Bauer v. White, 532 So.2d 506 (La.App. 1st Cir.1988).
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are taxed to appellants.

AFFIRMED.

. Mr. Duffard’s employer, Robert Levis Chevrolet, Inc. had been dismissed from the suit.

. This case was originally tried before Judge Joseph Tiemann, who was retired by the time the case was remanded. The present awards were made by Judge Tiemann's successor.

. In Palmer the plaintiff suffered from thoracic outlet syndrome, carpal tunnel syndrome, temporal mandibular joint dysfunction, and psychological injury. The plaintiff had undergone one surgery for carpal tunnel syndrome and another surgery for thoracic outlet syndrome. At the time of trial she was awaiting a second surgery for thoracic outlet syndrome and was still being treated for her psychological injury. The First Circuit affirmed a general damage award of $150,000.00. Hence the total award which was affirmed in Palmer involved similar injuries to the case at bar.