720 So.2d 1267 (1998)
Michael WEHBE and Hiyam Wehbe
v.
Thomas WAGUESPACK and Harry Lee, in His Capacity as Sheriff of Jefferson Parish.
No. 98-CA-475.
Court of Appeal of Louisiana, Fifth Circuit.
October 28, 1998.
*1269 Terry B. Loup, New Orleans, for Plaintiff-Appellee.
Kenneth C. Fonte, Metairie, for Defendant-Appellant.
James E. Brouillette, New Orleans, for Intervenor-Appellee.
Before DUFRESNE and CANNELLA, JJ., and NESTOR CURRAULT, Jr., J. Pro Tem.
DUFRESNE, Judge.
On August 1, 1995, at approximately 9:00 a.m., an automobile accident occurred between a 1995 Toyota vehicle, owned and operated by plaintiff, Michael Wehbe, and a 1994 Ford automobile, being driven by defendant, Thomas Waguespack, and owned by the Jefferson Parish Sheriff's Office. The accident occurred at the intersection of Northline Drive and Iona Street in Jefferson Parish. At the time of the collision, this intersection was apparently controlled by a four way stop sign. As a result of the accident, Mr. Wehbe sustained injuries to his neck and back, requiring medical treatment and future surgery. He subsequently filed a petition in the 24th Judicial District Court against Deputy Thomas Waguespack as driver of the vehicle and Sheriff Harry Lee as Waguespack's employer at the time of the accident.[1] In the suit, Mr. Wehbe sought damages for his personal injuries, together with past and future mental anguish and physical suffering, past and future expenses for medical care, and past and future loss of earnings and impaired earning capacity. Mrs. Hiyam Wehbe joined in the petition seeking damages for loss of consortium, services and society of her husband.
The matter proceeded to a judge trial on August 27-28, and September 3-4, 1997. After considering the evidence presented, the court found that the accident was caused by the fault of both parties, assigning 75% of the fault to Thomas Waguespack and 25% of the fault to Michael Wehbe. In addition, the *1270 court found that the accident was the cause of Michael Wehbe's injuries and thereafter awarded him the following damages: past medical expenses of $6,590.00, future medical expenses of $20,000.00, and general damages of $185,000.00.[2] The court awarded Mr. Wehbe no damages for loss of earnings or impaired earning capacity. Regarding Mrs. Wehbe, the court rejected her loss of consortium claim, finding that she sustained no damages as a result of the accident. A written judgment in accordance with these findings was signed on September 9, 1997.
From this judgment, both the plaintiffs and the defendants now appeal. In addition, the defendants also appeal from a judgment signed on November 18, 1997, fixing the amount of court costs on the original judgment. For the reasons set forth herein, we affirm the judgment of the trial court in all respects.
We will first address the specifications of error raised by Thomas Waguespack and Harry Lee.

ALLOCATION OF FAULT
In the first specified error, the defendants assert that the district court abused its discretion by assigning 75% of the fault of the collision to Sergeant Thomas Waguespack. Challenging the trial court's factual findings and credibility determinations, they contend that the evidence presented would suggest to a reasonable fact finder that Mr. Wehbe was principally at fault for the accident and further that the record certainly would not support a reasonable fact finder assigning more than 50% of the fault for the collision to Sergeant Waguespack.
In Kelly v. Boh Bros. Const. Co., Inc., 96-1051 (La.App. 5 Cir. 4/9/97), 694 So.2d 463, 466, writ denied, 97-1226 (La.9/5/97), 700 So.2d 507, writ denied, 97-1249 (La.9/5/97), 700 So.2d 509, this court stated the following:
There is no question that the trial court's allocation of fault among the parties presents a factual determination based in part on credibility determinations by the trial judge. Such a finding is not to be reversed on appeal absent a finding of manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989). Even if the court of appeal would have decided the case differently, had it been the original trier of fact, the trial court judgment should be affirmed unless it is found to be clearly wrong. Welch v. Winn-Dixie, 94-2331 (La.5/22/95), 655 So.2d 309. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony or the facts. Welch v. Winn-Dixie, supra; Stobart v. State of Louisiana Through Dept. of Transportation and Development, 617 So.2d 880 (La.1993).
In allocating fault among the parties involved, the court is to consider several factors, as set out in Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985), quoting from Section 2(b) of the Uniform Comparative Fault Act and the Comments thereto:
In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.
The court in Watson elaborated further stating:
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.
*1271 Based on our review, we find that the record supports the trial court's factual findings, including the allocation of fault between the parties. At trial, three witnesses were called to testify about the circumstances surrounding the accident. Mr. Wehbe testified that on August 1, 1995, he was employed as executive chef at the Metairie Country Club. Although he was on vacation that day, he decided to go to the country club to meet the new general manager. According to Mr. Wehbe, he was driving down Northline towards the country club. He stopped at the stop sign, looked left and then right. Seeing no other vehicles, he proceeded through the intersection. At that time, he was struck by a vehicle being driven by Deputy Waguespack.
Deputy Waguespack gave a different version of events. According to Deputy Waguespack, on the day of the accident, he was on routine patrol of the area. When he arrived at the intersection of Iona, Pelhan, and Northline, he decided to take a short break. He put his car in park in the median for about ten minutes and then decided to go to the country club to get a cup of coffee. Deputy Waguespack testified that he saw the Wehbe vehicle approximately seventy-five feet away, that he looked and saw no other cars, and thereafter made a left hand turn onto Northline. He was in the process of executing the left hand turn when he was struck by the Wehbe vehicle. Deputy Waguespack was unable to estimate the speed of the Wehbe Vehicle, but claimed that his speed was about seven to eight miles per hour. Deputy Waguespack also claimed that when he departed the intersection, he did not see any cars at the stop signs.
Stephanie Kern, an eyewitness, testified that on the day of the accident she was walking down Northline with her two children. She stated, with certainty, that she saw a green[3] car (the Wehbe vehicle) stop at the stop sign and then proceed through the intersection. She then saw a white car (the Jefferson Parish Sheriff's Office vehicle) "coast through a median" and "collide into a green car that was already moving." Ms. Kern testified that she had a clear and unobstructed view of the accident. She also testified that she did not see the white car parked in the median before the accident.
In addition to these factual witnesses, both parties hired accident reconstruction experts who testified at trial. John Rigol, called by the defense, testified that he listened to the trial testimony of the witnesses and that he did not agree with the explanation of the accident offered by Mr. Wehbe, Deputy Waguespack or Stephanie Kern. He testified that based on all the information that he gathered and reviewed, it was his opinion that the Wehbe vehicle did not stop at the stop sign, and that the Wehbe vehicle actually struck the Waguespack vehicle. He further testified that the substantial amount of damage to the Wehbe vehicle, as well as the fact that the airbags deployed, led him to believe that the speed of the Wehbe vehicle was substantial at the time of impact.[4]
In rebuttal, the plaintiffs called John Bates as an expert in accident reconstruction. It was his opinion that there was insufficient data available to conduct an accident reconstruction according to the standards and requirements of his profession.
Based on the facts as previously set forth, and given the conflicting testimony, we cannot say that the trial judge's factual determinations and allocation of fault constitute manifest error. We find that the record supports the trial court's findings and coincident allocation of fault between the parties. Accordingly, the part of the judgment allocating fault between the parties is hereby affirmed.

AWARD OF GENERAL DAMAGES
The defendants also challenge the award of damages, asserting that $185,000.00 for general damages is too high under the *1272 circumstances of this case. They argue that considering that the district court completely rejected plaintiff's claim for loss of earning capacity, the assignment of $185,000.00 for general damages for a herniated C3-4 disc without surgery and aggravation of pre-existing degenerative lumbar spine disease without any disc herniation, far exceeded what any reasonable fact finder could award.
The discretion vesting in the trier of fact is great and even vast, so that an appellate court should rarely disturb an award for general damages. Reasonable persons frequently disagree with the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of a particular injury to a particular plaintiff on the particular circumstances, that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993); Alfonso v. Piccadilly Cafeteria, Inc., 95-279 (La.App. 5 Cir. 11/28/95), 665 So.2d 589, writ denied, 95-3119 (La.2/16/96), 667 So.2d 1060.
According to Mr. Wehbe, after the accident, he experienced pain in his left hand and neck, as well as dizziness. The following day, he visited Dr. Michael Haydel, a chiropractor, with complaints of hand, arm, shoulder, neck and lower back pain. Mr. Wehbe received treatment from Dr. Haydel on a regular basis, consisting of intersegmental traction to the spinal region, an activated treatment to the spinal segments, muscle stimulation and heat treatments. During the course of the treatment, Mr. Wehbe showed some improvement, but continued to have problems. Dr. Haydel recommended that he undergo diagnostic testing and that he make an appointment with a neurosurgeon. Wehbe subsequently visited Dr. John Schumacher, a board certified neurosurgeon. After conducting a clinical examination, Dr. Schumacher ordered further radiological testing which included an MRI of the cervical and lumbar spine. His review of the testing revealed that there was a large disc herniation at the C3-4 level which impinged on the spinal cord and some degenerative spurring at C5-6, C6-7 level which only minimally impinged upon the spinal fluid sac. Mr. Wehbe was also diagnosed with frozen shoulder syndrome as well as degenerative lumbar spine disease. Based on these findings, Dr. Schumacher recommended that Mr. Wehbe undergo an anterior cervical fusion, believing that this surgery would significantly relieve his neck and shoulder pain. Dr. Schumacher did not recommend surgery on the lumbar spine but suggested that those symptoms be treated with anti-inflammatory drugs and back exercises. The doctor testified that based on Mr. Wehbe's history, the most likely cause of the herniated disc was the motor vehicle accident of August 1, 1995, and further that Mr. Wehbe's pre-existing degenerative lumbar spine disease was probably aggravated by the accident.
Regarding permanent physical impairment, Dr. Schumacher gave Wehbe a 10% whole man physical disability rating, either with or without surgery, as a result of the herniated disc in his neck. Dr. Schumacher advised Wehbe to avoid activities requiring a repetitive or prolonged use of the arms above the level of the head, repetitive or prolonged hyperextension of the neck, repetitive or prolonged lifting of weights in excess of thirty to fifty pounds above the level of the shoulder, and activities requiring the wearing of heavy head gear. As far as Wehbe's lower back problems, Dr. Shumacher testified that there was very minimal impairment, if any, assigned to the lumbar region. In that regard, he advised Mr. Wehbe to avoid heavy manual laboring occupations and excessive lifting.
During the course of the trial, Mr. Wehbe testified that he is in more pain now than on the day of the accident and that he plans to undergo the recommended surgery. He asserts that the pain has greatly affected his life and that he can no longer do many activities that he used to do. His teenage daughter, Nada Wehbe, testified that the accident has greatly changed his life, that he is miserable, and that he is limited in what he can do.
In the present case, many rational triers of fact could have decided that a lower award would have been more appropriate, especially in light of the fact that Mr. Wehbe had prior *1273 medical problems, including complaints of low back, neck, and left arm pain. However, we cannot conclude from the entirety of the evidence on the record, viewed in the light most favorable to the prevailing party in the trial court, that a rational trier of fact could not have fixed the awards of general damages at the level set by the trial judge or that this is one of those exceptional cases where such awards are so gross as to be contrary to right reason. Youn v. Maritime Overseas Corp., supra. Accordingly, we affirm the trial court's award of general damages to Mr. Wehbe.

EXPERT WITNESS FEES
In the defendants' remaining three assignments of error, they complain about the setting of expert witness fees. They first complain that the trial court abused its discretion by awarding to Michael Wehbe the expert fees of his vocational rehabilitation witness, Nathaniel Fentress, considering the fact that his claim for loss of wages and future earning capacity was defeated. They next assert that the trial judge abused his discretion in awarding Mr. Wehbe $4,000.00[5] as the expert fee of John Bates, an accident reconstruction expert who testified only in rebuttal for a brief period of time, and who did not perform any reconstruction of the accident. Thirdly, the defendants contend that the court abused its discretion by awarding Michael Wehbe an excessive amount of $1,400.00 for the expert fees of Dr. John Schumacher, who testified only briefly, and who had no waiting time.
LSA-C.C.P. art.1920 provides that as follows:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause. Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
The trial court is vested with great discretion to assess costs against any party as it may deem equitable, even against the party who prevails on the merits. However, the general rule is that costs are to be paid by the party cast in judgment. While the trial court may in its discretion assess some costs against a prevailing plaintiff who was found to be partially at fault, the trial court may likewise assess all costs against the defendant cast in judgment despite a finding of fault on the part of the plaintiff. Stockstill v. C.F. Industries, Inc., 94 2072 (La.App. 1 Cir. 12/15/95), 665 So.2d 802, writ denied, 96-0149 (La.3/15/96), 669 So.2d 428.
LSA-R.S. 13:3666 reads, in part, as follows:
B. The court shall determine the amount of the fees of said expert witnesses which are to be taxed as costs to be paid by the party cast in judgment either:
(1) From the testimony of the expert relative to his time rendered and the cost of his services adduced upon the trial of the cause, outside the presence of the jury, the court shall determine the amount thereof and include same.
(2) By rule to show cause brought by the party in whose favor a judgment is rendered against the party cast in judgment for the purpose of determining the amount of the expert fees to be paid by the party cast in judgment, which rule upon being made absolute by the trial court shall form a part of the final judgment in the cause.
Generally, the amount and fixing of expert fees lie within the sound discretion of the trial court and will not be disturbed in the absence of an abuse of discretion. Factors to be considered by the trial judge in setting an expert witness fee include time spent testifying, time spent in preparatory work for trial, time spent away from regular duties while waiting to testify, the extent and nature of the work performed, and the knowledge, attainments and skill of the expert. Selvage v. Robert Levis Chevrolet, Inc., 96-1035 (La.App. 5 Cir. 7/29/97), 698 So.2d 442, writ denied, 97-2215 (La.11/26/97), 703 So.2d 646, appeal after remand, 98-197 *1274 (La.App. 5 Cir. 9/16/98), 719 So.2d 1088. Taking these factors into account, we cannot say that the trial court abused its great discretion in setting the expert fees of these three witnesses.
Based on the foregoing discussion, we find that the arguments raised by the defendants on appeal lack merit. We now turn our attention to the specifications of error raised by the plaintiffs.

ADMISSION OF EXPERT TESTIMONY
In the first assigned error, plaintiffs contend that the trial court erred when it allowed John Rigol to testify and to give opinions concerning his accident reconstruction.
Prior to Mr. Rigol's testimony, the plaintiffs requested that the court conduct a preliminary examination to determine whether his investigation, opinions and accident reconstruction complied with the requirements of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and State v. Foret, 628 So.2d 1116 (La.1993). The trial judge refused plaintiffs' request for a preliminary hearing and thereafter allowed the introduction of Mr. Rigol's expert testimony, stating as follows:
Well, I'm going to overrule you. If this was a jury trial, I would err on the side of caution and properly rule your way. And you can make a record like this and take it to the Fifth. However, I'm interested to see what is going to be said based on the limited information he seems to have gone by. So, that in future cases I will be able to have thefor cases in the future and before a jury, I will have already had hindsight to know whether or not I should be doing this or not. And if after hearing his testimony I feel it's totallyit's not grounded, it doesn't have a sufficient foundation, I'm just going to disregard it. Now, you may be able to take an appeal on the fact that I am letting it in. It's a very iffy situation. So I'm going to allow it in, in front of me.
The plaintiffs now contend that the trial judge erred in refusing to conduct a preliminary examination and in thereafter allowing the admission of the testimony. They contend that the evidence should have been excluded because it failed to meet the standard required under Louisiana law for the admissibility of expert testimony.
In Daubert v. Merrell Dow Pharmaceuticals, Inc., supra, the United States Supreme Court set up a new standard for the admission of expert testimony. That standard was adopted by the Louisiana Supreme Court in State v. Foret, supra. In Daubert, the Supreme Court held that Federal Rule of Evidence 702, rather than the "general acceptance" standard controls the admissibility of expert scientific evidence in federal court. Article 702 of the Louisiana Code of Evidence is identical to Federal Rule of Evidence 702, and Louisiana jurisprudence on admissibility of expert testimony generally follows federal interpretation. Mitchell v. Uniroyal Goodrich Tire, Co., Inc., 95-0403 (La.App. 4 Cir. 12/28/95), 666 So.2d 727, writ denied, 96-0260 (La.3/15/96), 669 So.2d 421. LSA-C.E. art. 702 reads as follows:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
In Clement v. Griffin, 634 So.2d 412, 426-427 (La.App. 4 Cir.1994), the court discussed the requirements of Daubert as follows:
The Daubert decision requires trial judges to consider factors other than whether the purported expert's testimony is based on methodology subject to "general acceptance" in the scientific community, allowing the admission of some testimony even if the methodology is not "generally accepted." However, the Daubert case also requires that the trial judge insure that any and all scientific testimony or evidence is not only relevant, but reliable, as a general standard.
To qualify as scientific evidence, an inference, assertion, or opinion must be derived by scientific method. Under Daubert, the federal trial judge is required to apply a *1275 two-step analysis, which now applies to La.C.E. art. 702. First, the trial judge must determine in a preliminary hearing whether the expert is proposing to testify to actual scientific knowledge. Second, the trial judge must determine whether such knowledge will assist the trier of fact in understanding or determining a fact in issue.
This preliminary assessment, preferably conducted outside the jury's presence, should include consideration of the expert's reasoning or methodology underlying the testimony. The court should consider both the validity of the reasoning or methodology and whether that reasoning or methodology properly can be applied to the facts at issue. The trial judge should then render an oral or written opinion of its findings on these issues. It may consider, as the United States Supreme Court did in Daubert, the following factors in determining the admissibility of expert testimony:
1. The "testability" of the expert's theory or technique,
2. Whether the theory or technique has been subjected to peer review and publication,
3. The known or potential rate of error, and
4. Whether the methodology is generally accepted in the scientific community.
In the present case, it is doubtful that Mr. Rigol's testimony rose to the level of reliability envisioned by the courts in the Daubert and Foret decisions. However, even assuming this testimony was improperly admitted, we find such error to be harmless under the particular circumstances of this case. The judge viewed his testimony with skepticism, realizing that Mr. Rigol did not have much known information available to him on which to base his calculations. The judge was clearly aware that most of Mr. Rigol's work was based on assumptions and that if he had estimated the point of impact improperly, then all of the conclusions that he gave would be inaccurate. The judge made clear that if the testimony did not have a sufficient foundation, he would disregard it. Accordingly, based on all these circumstances, any error in the admission of this expert testimony can be deemed harmless.

ALLOCATION OF FAULT
In the second assigned error, the plaintiffs complain about the trial court's factual findings and subsequent apportionment of fault. Claiming that there was no factual evidence to show that Mr. Wehbe did not stop for the stop sign or enter the intersection first, they contend that the trial court erred in finding Mr. Wehbe to be 25% at fault. They request that this court reverse the trial court's determinations and find that the accident was caused solely by Deputy Waguespack.
We have already discussed the trial court's factual findings and allocation of fault and have found them to be adequately supported by the record. Therefore, no further discussion on this issue is warranted.

LOSS OF PAST AND FUTURE INCOME AND IMPAIRED EARNING CAPACITY
In the third assignment of error, the plaintiffs allege that the trial court committed manifest error in failing to award damages for past and future loss of income and impaired earning capacity.
In Mathews v. Dousay, 96-858 (La.App. 3 Cir. 1/15/97), 689 So.2d 503, the court stated as follows:
To recover for actual wage loss, a plaintiff must prove the length of time missed from work due to the tort and must prove past lost earnings. Past lost earnings are susceptible of mathematical calculation from evidence offered at trial. An award for past lost earnings requires evidence as reasonably establishes the claim, which may consist of the plaintiff's own testimony. An award for past lost earnings is not subject to the much-discretion rule when it is susceptible of mathematical calculation from documentary proof. The plaintiff's uncorroborated, self-serving testimony will not be sufficient to support an award if it is shown that corroborative evidence was available and was not produced. To obtain an award for future loss of earning capacity, a plaintiff must present medical evidence that indicates with reasonable certainty *1276 that a residual disability causally related to the accident exists. Future loss of earnings, which are inherently speculative, must be proven with a reasonable degree of certainty, and purely conjectural or uncertain future loss of earnings will not be allowed. [citations omitted].
The record is clear that at the time of the accident, Mr. Wehbe was earning $55,000.00 per year as an executive chef at the Metairie Country Club, and that since that time, he has not earned a comparable amount. However, we find, as apparently did the trial judge, that Mr. Wehbe's past and allegedly future economic losses were not the result of the August 1, 1995 accident, but rather due to other reasons.
In the present case, the trial judge denied these claims based on the testimony of Mr. Wehbe's employers. We have carefully reviewed the record, including the testimony of Mr. Wehbe, his employers, Nathaniel Fentress (a rehabilitation counselor), and Dr. Melvin Wolfson (who conducted an economic analysis of Mr. Wehbe). We find that the trial judge's determinations are supported by the record.
Nicholas Cascio, the general manager of the Metairie Country Club, testified, through a videotaped deposition, that Mr. Wehbe was terminated in the beginning of November of 1995 because he "could not facilitate the function of his job as far as the operational structure of the business." On August 1, 1995, when Mr. Cascio took over as general manager of the club, there was major concern of the Board of Directors that the food and beverage operation had some serious problems. This fact is substantiated by a memo sent to Mr. Wehbe in May of 1995 by the interim general manager setting forth numerous deficiencies in his department. In Cascio's deposition testimony, he testified that none of the injuries sustained by Mr. Wehbe in the automobile accident contributed, in any way, to the decision to terminate Mr. Wehbe's employment. In addition, Mr. Don Carione, a subsequent employer of Mr. Wehbe, testified that he was terminated from his employment in March of 1996 for reasons unrelated to any accident, but rather because an employee made a complaint of sexual harassment against Mr. Wehbe. In addition to the testimony of the employers, Mr. Nathaniel Fentress, plaintiff's own witness, testified that Mr. Wehbe could work in the position of executive chef, notwithstanding his injuries.
Based on our review of the record, including the testimony previously set forth, we find no abuse of discretion in the trial court's denial of Mr. Wehbe's claims for loss of past and future wages and impaired earning capacity. Accordingly, we affirm that portion of the judgment denying such relief.

EXCLUSION OF DEPOSITION TESTIMONY
The plaintiffs, in the fourth assigned error, argue that the trial court erred when it excluded the deposition testimony of plaintiff, Mrs. Hiyam Wehbe, who was out of the country at the time of trial. Near the close of plaintiffs' case, counsel moved for the introduction of the deposition of Mrs. Wehbe which was taken on May 22, 1996 at the request of defense counsel. The defendants objected to the introduction of the deposition arguing that plaintiff had an obligation to appear for trial and she chose not to do so. They further argued that the admission of the deposition would adversely affect them because it would prevent them from crossexamining her on matters that had come up during the trial through the testimony of both her husband and her daughter. After listening to the arguments of counsel, the trial judge refused to allow the introduction of the deposition.
LSA-C.C.P. art. 1450 provides for the use of depositions and reads, in pertinent part, as follows:
A. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Louisiana Code of Evidence applied as though the witnesses were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

*1277 (3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:
(a) That the witness is unavailable;
(b) That the witness resides at a distance greater than one hundred miles from the place of trial or hearing or is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition; or
(c) Upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.
In the present case, the trial judge was justified pursuant to LSA-C.C.P. art. 1450(A)(3) in excluding the deposition of Mrs. Hiyam Wehbe. The record contains nothing to indicate that her failure to attend trial was attributable to any reason other than her choice to remain in Lebanon. Moreover, the introduction of the evidence would adversely affect the defendants because they would be precluded from cross-examining her on the loss of consortium claim. Accordingly, we reject the arguments raised by the plaintiffs in this specified error.

LOSS OF CONSORTIUM CLAIM
In their final assigned error, the plaintiffs complain that the trial court committed manifest error in failing to award damages to Hiyam Wehbe for loss of consortium, services and society.
A claim for loss of consortium encompasses seven elements: loss of love and affection; loss of society and companionship; impairment of sexual relations; loss of performance of material services; loss of financial support; loss of aid and assistance; and loss of felicity. Ferrell v. Fireman's Fund Ins. Co., 96-3028 (La.7/1/97), 696 So.2d 569. To be compensable, it is not necessary that a loss of consortium claim include damages from each category. Seagers v. Pailet, 95-52 (La.App. 5 Cir. 5/10/95), 656 So.2d 700. The successful claimant for loss of consortium damages has to prove three things: the liability of the defendant, his or her spouse's damages, and his or her consequent loss of consortium damages. Peck v. Wal-Mart Stores, Inc., 96-645 (La.App. 3 Cir. 11/6/96), 682 So.2d 974.
As with general damages, the trier of fact is given much discretion in its deliberations concerning awards for loss of consortium. Whether a party is entitled to loss of consortium damages is a question of fact, and a finding of fact cannot be overturned on appeal absent manifest error. Mathews v. Dousay, supra.
The evidence presented at trial indicated that Mrs. Wehbe moved back to her home land of Lebanon and that Mr. Wehbe had not seen his wife in approximately one and one-half years. The majority of the evidence at trial established that Mrs. Wehbe returned to Lebanon because of financial reasons. Michael Wehbe testified that she left because they were in a bad financial situation. Furthermore, their daughter testified that her mother left because she could no longer take Michael Wehbe's screaming and yelling at night. She additionally remarked that financial problems contributed to her mother's leaving.
Based on the record, we find that the trial judge did not abuse his discretion in denying Mrs. Wehbe's claim for loss of consortium. In light of the testimony that Mr. Wehbe could still work as an executive chef and that the loss of his job had nothing to do with the accident, we find that the evidence did not support Mr. Wehbe's claim that their financial problems, which allegedly caused Mrs. Wehbe to leave, were attributable to the injuries he sustained in the accident. Based on the record, we find that the trial judge did not abuse his discretion in denying Mrs. Wehbe's claim for loss of consortium.
For the reasons previously set forth, we hereby affirm the judgment of the trial court in all respects.
AFFIRMED.
NOTES
[1] The parties entered into a stipulation that Harry Lee, in his capacity as Sheriff of Jefferson Parish, is legally responsible for the negligent acts and omissions of Thomas Waguespack at the time of the accident sued on herein, to the extent that Thomas Waguespack is proven to be at fault or negligent in causing the accident sued on herein; and further, that Harry Lee, in his capacity as Sheriff of Jefferson Parish, agrees to indemnify Thomas Waguespack from any final judgment that may be rendered against Thomas Waguespack in this action.
[2] The total amount of damages awarded to Mr. Wehbe was $158,692.50, representing 75% of the total verdict.
[3] Mr. Wehbe's vehicle was actually black, although at times during the testimony it was referred to as being a dark green.
[4] Throughout Mr. Rigol's testimony, it was made clear that he had very limited information available to him and that many of his opinions were based on assumptions rather than actual knowns. He admitted that if the point of impact, which is the keystone to the calculations, was figured incorrectly, then his calculations would not be accurate.
[5] In the rule to tax costs filed by the plaintiffs, they requested $9,129.97 for Mr. Bates' services. The court found this amount to be unreasonable and set the amount of $4,000.00 taxable to the defendants.