Judgment rendered September 25, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 52,884-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

BRENDA LEWIS                                    Plaintiff-Appellee

versus

CITY OF BASTROP                                 Defendant-Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Morehouse, Louisiana
Trial Court No. 2014-085

Honorable Robert C. Johnson, Judge

* * * * *

HUDSON, POTTS & BERNSTEIN, L.L.P.         Counsel for Appellant
By:  Johnny R. Huckabay, II
     Robert M. Baldwin
     L. Casey Auttonberry

HALES & STRICKLAND                         Counsel for Appellee
By:  Myrt T. Hales, Jr.
     Joshua L. Strickland

* * * * *

Before MOORE, STEPHENS, and THOMPSON, JJ.

**THOMPSON, J.**

This matter arises from an incident in which Plaintiff, Brenda Lewis (hereinafter "Plaintiff"), a spectator attending the t-ball game of her grandson at the City of Bastrop's Carter Park recreational complex, tripped on an above ground support brace of a fence at one of the playing fields and was injured. Defendant, City of Bastrop (hereinafter "Defendant"), appeals the trial court's judgment in favor of Plaintiff, asserting in part that Defendant is entitled to immunity under La. R.S. 9:2795, the Recreational Use Immunity Statute. For the reasons set forth below, we reverse.

## FACTS AND PROCEDURAL HISTORY

On April 29, 2013, Plaintiff was injured while attending her grandson's t-ball game at Carter Park in Bastrop, Louisiana. Plaintiff arrived at Carter Park in the late afternoon that day, around 5:30-6:00 p.m. under good weather conditions. She was walking with her daughter-in-law, Ms. Aubrey Allen (hereinafter "Ms. Allen"), as they approached the field where Plaintiff's grandson would be playing. Plaintiff walked alongside a significant distance of fencing on the way to her grandson's game. Plaintiff admitted at trial she was inattentive while walking, talking with Ms. Allen, and looking for her grandson. Plaintiff testified she tripped and fell, injuring her right foot. After hitting the ground and injuring her foot, she looked back to see what caused her to trip and noticed the above ground pipe stander and securing rebar partially driven into the ground. Plaintiff suffered a fractured foot that required surgery.

Joint Exhibit 3 from the trial appears below, which depicts the pipe stander and rebar on which Plaintiff allegedly tripped.



*Figure 1: Trial Court - Joint Exhibit 3*

On February 26, 2014, Plaintiff filed suit in the 4th Judicial District Court requesting damages from Defendant. As for her damages Plaintiff maintained that, in addition to her medical expenses, she is unable to participate in the activities she enjoyed before the accident and experiences discomfort due to the multiple screws and swelling in her foot.

Carter Park is a recreational facility that is owned, operated, and managed by Defendant. The city employees perform preparation work at Carter Park for visitors they know will utilize the Park for a variety of recreational activities, including participants and spectators of softball and t-ball games. The city employees are employed by Defendant. Preparation work performed at Carter Park by the city employees includes cleaning and mowing the grounds for various activities, and moving and securing the portable fencing that are necessary for the scheduled activities.

The fence is composed of portable/moveable fence panels that can be positioned into different configurations to accommodate different needs for

various sporting events, such as baseball, softball, t-ball, and football games. The ten-foot moveable fence panels each have stabilizing "L" shaped pipe standers that are fastened to the back of the fence which allow the fence panel to stand erect. The "L" shaped pipe stander is above ground and each is anchored by a rebar stake inserted through a pre-drilled hole and driven into the ground. A sledgehammer or piece of equipment is used to drive the rebar stakes through the pipe stander and into the ground. The fence at Carter Park is comprised of fence panels connected by pipe standers and securing rebar at ten-foot intervals.

A motion for summary judgment was filed by Defendant on June 29, 2015. In Defendant's motion, Defendant argued recreational immunity pursuant to La. R.S. 9:2795 and that, in the alternative, it was not liable under ordinary negligence principles. *See* La. R.S. 9:2800(C). On September 10, 2015, Plaintiff filed an opposition to the motion for summary judgment claiming willful or malicious failure to warn and gross negligence. La. R.S. 9:2795(B)(1), (E)(2)(d). The motion was heard on December 22, 2015, and the trial court denied Defendant's motion for summary judgment without issuing reasons. The matter then proceeded to trial.

**Bench Trial**

The bench trial of this matter was held on October 10-13, 2016. The trial court heard testimony from Plaintiff, Plaintiff's daughter-in-law (Ms. Allen), Plaintiff's husband, the Mayor of Bastrop, Plaintiff's safety expert, and various city employees who testified they worked with the fence panels at Carter Park.

3

Plaintiff testified that immediately before tripping and falling she was not watching where she was going because she was looking for her grandson. Plaintiff walked into the area immediately adjacent to the fence panel where the pipe stander and securing rebar was located and she tripped and fell injuring herself. She commented that if she had been paying attention she would not have tripped. Plaintiff also testified that there were no warning signs or anything keeping visitors from walking in the area. Plaintiff claimed that the pathway was the only entrance to get to the t-ball fields.

Dr. Timothy Spires of Monroe, Louisiana, performed surgery on Plaintiff's foot and to this day Plaintiff maintains that her foot constantly hurts, swells, and limits her activities. Plaintiff's husband, Mr. George Lewis, who was not present during the accident, testified to Plaintiff's discomfort and inability to enjoy certain activities after her fall.

Also testifying at trial was the Plaintiff's daughter-in-law, Ms. Allen, who accompanied Plaintiff to Carter Park that day to watch her son, Plaintiff's grandson, play t-ball. Ms. Allen testified she was not certain if, at the time of Plaintiff's fall, Plaintiff was talking with her or looking for her grandson (child of Ms. Allen). Ms. Allen provided testimony that she had seen someone else trip over a different rebar stake on a different day, but provided no other evidence to support her claim.

Testimony from city employees at trial established the moveable fence panels were built in 1976 or 1977, and had been configured at Carter Park weeks before the date of the accident in preparation for t-ball and softball seasons. The Mayor of Bastrop, Mr. Arthur Jones, who worked in

4

the parks and recreation division for the City of Bastrop for decades prior to his election as Mayor, testified that there had never been an accident at Carter Park in the 40 years it has been open.

The exact condition of the specific pipe stander and rebar on which Plaintiff tripped was disputed at trial. Plaintiff asserted that the rebar extended above the pipe stander created a situation which would more likely cause someone to trip and fall. The trial court was faced with making credibility determinations regarding the pipe on which Plaintiff tripped as the testimony of city employees and that of Plaintiff's daughter-in-law, Ms. Allen, were irreconcilable.

The city employees who testified at trial described the accident site as though it were an anomaly to other pipe standers for the remainder of the fence. Each city employee testified that the rebar stake in the fence was not sticking up when they left Carter Park and that, if they had known it was sticking up, they would have driven it into the ground. One of the employees, Mr. Anthony Robinson, confirmed on the day of the accident he inspected Carter Park before the recreational activities began. The employees' supervisor, Mr. Samuel Robinson, testified that he checked the work of the employees. He also testified that the place of the accident was an area behind the field that people were not supposed to walk. There was testimony the city employees used tape to direct people away from the area. Mr. Samuel Robinson noted that the pipe stander works as a lever when someone leans against the fence which can cause the end of the horizontal portion of the pipe stander to come up, pulling the rebar stake out of the

5

ground. Whether or not someone leaned against the fence is unknown and is in dispute between the parties.

Ms. Allen, however, testified this particular pipe stander and stabilizing rebar was not unique, and that "almost every piece of pipe there had rebar sticking in it sticking up." Regarding Plaintiff's fall, Ms. Allen testified "[a]ll I could think about was seeing that other piece of pipe, you know, because like I said there were pipes like every six feet or so holding the fence up."

The trial court rejected the testimony of the city employees regarding whether the particular pipe stander and rebar had ever been completely driven into the ground. It therefore apparently concluded the pipe stander and rebar constantly remained protruding above ground as depicted in the photograph above identified as Figure 1.

The trial court also heard from Plaintiff's safety expert, Mr. Dennis Howard (hereinafter "Mr. Howard").[1] Mr. Howard found that there were two holes drilled into the galvanized pipe stander used to serve as a brace for the fencing system, and only one "L" shaped rebar was used to attempt to secure the brace at the site of the accident. Mr. Howard testified that the rebar should have been lying flat on the pipe, noting that it was "an incomplete condition that created a dangerous tripping hazard." He opined that the rebar stake was likely left in that position by the city employee who attempted to anchor it down. Mr. Howard did note, however, that he did not believe that the "employees wanted somebody to get hurt or a hazard to be

---

[1] Mr. Howard is a certified safety professional in comprehensive general practice with a subspecialty in hazard recognition, slips, trips, and falls. Mr. Howard also is a recognized expert in inspection protocol, safety management, and loss control. The trial court found him qualified as an expert in these fields.

left unaddressed" or that there was "any kind of malice or intent in that way." He testified that he did not definitively know when the inspection occurred or when the rebar pulled up.

**Trial Court's Decision**

On November 15, 2018, the trial court issued written reasons for judgment in favor of Plaintiff, attributing 70% fault to Defendant and 30% fault to Plaintiff. In its analysis the trial court briefly addressed the provisions of La. R.S. 9:2795, the Recreational Use Immunity Statute, and then focused its attention exclusively to La. R.S. 9:2800, limitation of liability for public bodies.

### *La. R.S. 9:2795. Recreational Use Immunity Statute*

The trial court first considered whether Defendant was afforded immunity under La. R.S. 9:2795. It found that Carter Park is a recreational facility that falls within the scope of La. R.S. 9:2795, the Recreational Use Immunity Statute, and thus, the case is governed by that law.

The trial court next apparently concluded the pipe stander and protruding rebar constituted a defective condition in the fence and that Defendant had actual or constructive knowledge of its defective fence. The trial court noted that Defendant did not produce any written records showing that any follow-up work was done to address any issues that may have arisen in the interim time period between the date of the initial work of setting up the fence and the date of accident in this case. Defendant did not present any expert testimony to counter the testimony of Plaintiff's expert, Mr. Howard, that the rebar stake was "an incomplete condition that created a dangerous tripping hazard."

7

The trial court held "the city created the hazardous condition that ultimately led to the plaintiff's trip and fall . . . [and] the city had actual and/or constructive knowledge of this harmful condition and failed to take corrective action within a reasonable period of time to correct the condition." The trial court opined "the city failed to warn the public of the harmful condition in this case and this was a contributing cause of the plaintiff's trip and fall." Therefore, the trial court determined that Defendant's conduct was "willful and grossly negligent."

With an apparent finding by the trial court of the requisite "willful or malicious failure to warn against a dangerous condition" as required by La. R.S. 9:2795, Defendant was then deprived of the immunity afforded for landowners of property offered for public use for recreational purposes. The trial court next addressed the provisions of La. R.S. 9:2800 for an analysis under the facts of any possible limitation of liability for public bodies.

### La. R.S. 9:2800. Limitation of Liability for Public Bodies

The trial court considered the four factors a party must prove in a claim against a public entity for negligence: (1) the entity owned or had custody of the thing that caused the damage; (2) the thing was defective and that it created an unreasonable risk of harm to others; (3) the entity had actual or constructive knowledge of the defect or unreasonable risk of harm and failed to take corrective action within a reasonable time; and (4) the defect was a cause-in-fact of plaintiff's injuries. *Hubbard v. Jefferson Parks & Recreation*, 10-24 (La. App. 5 Cir. 05/25/10), 40 So. 3d 1106, 1110, *writ denied*, 10-1486 (La. 10/01/10), 45 So. 3d 1102 (citing *Butkiewicz v. Evans*,

8

06-236 (La. App. 5 Cir. 09/26/06), 943 So. 2d 509, 513). The trial court analyzed each of the four factors as it applies to this case.

The trial court determined that all the evidence and testimony at trial proved that Defendant owned, operated, and managed Carter Park and that the rebar stake that was alleged to have caused Plaintiff's injuries was in the custody of Defendant. The trial court further found that the rebar stake was defective and created an unreasonable risk of harm to others. It noted the city employees' testimony that Carter Park was in good condition and free from any hazards, but rejected such testimony as unreliable. It also cited to Mr. Howard's findings that the rebar stake was in "an incomplete condition that created a dangerous tripping hazard." Furthermore, the trial court noted that, according to Mr. Howard, it appeared the job of securing the rebar completely was interrupted at some point and never completed.

Reviewing photographs of the rebar stake admitted by the parties, the trial court concluded "it did not appear that the pipe was properly driven down into the ground. Moreover, no evidence was ever introduced . . . that anyone had leaned on or in any way applied any force or pressure to the fence brace that would cause the one re-bar that was used to help brace the fence to become dislodged and stick up for any reason." The trial court acknowledged Defendant's argument that the area where Plaintiff tripped and fell was open and obvious, but did not comment on it further.

In conclusion, the trial court determined that Carter Park contained a defect in the form of a defective fence brace that posed an unreasonable risk of harm to the general public. In its determination, the trial court weighed the credibility of the witnesses, finding Mr. Howard's testimony credible

9

that the area where Plaintiff tripped was a hazard and no one should have been allowed to traverse in that area. The trial court did not accept or credit the testimony of the city employees.

The trial court concluded the pipe stander and protruding rebar was defective and was the cause in fact of Plaintiff's injuries. The trial court noted that, prior to Plaintiff's fall, the Plaintiff's "attention was drawn elsewhere" and that if she had seen the rebar she may have avoided it. Nonetheless, the trial court found general damages in the amount of $300,000 and special damages in the amount of $58,180.53. The trial court also found Defendant 70% at fault and attributed 30% fault to Plaintiff for apparently being inattentive.

## DEFENDANT'S ASSIGNMENTS OF ERROR

1. Plaintiff failed to carry her burden of proving liability under La. R.S. 9:2795, the Recreational Use Immunity Statute;

2. The facts do not support the trial court's ruling showing actual or constructive knowledge of the defective fence by Defendant under La. R.S. 9:2800; and

3. The trial court erred by finding damages in the excessive amount of $300,000 for a fractured foot.

## DISCUSSION

### Standard of Review

A court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Henderson v. Nissan Motor Corp.*, 03-606 (La. 02/06/04), 869 So. 2d 62, 68 (citing *Stobart v. State, Through Dep't of Transp. & Dev.*, 617 So. 2d 880, 882 (La. 04/12/93)). The issue to be resolved by the appellate court is not whether the trial court was right or wrong, but whether its conclusion was a

10

reasonable one. *Stobart*, *supra* at 882. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Id.* Where two permissible views of the evidence exist, the fact-finder's choice between them cannot be manifestly erroneous or clearly wrong. *Carr v. Oake Tree Apartments*, 34,539 (La. App. 2d Cir. 05/09/01), 786 So. 2d 230, 235, *writ denied*, 2001-1682 (La. 09/21/01), 797 So. 2d 675 (citing *Stobart*, *supra* at 883).

**<u>Assignment of Error Number One:</u>**

> ***Plaintiff failed to carry her burden of proving liability under La. R.S. 9:2795, the Recreational Use Immunity Statute***

Defendant argues it was entitled to immunity and that the trial court should have analyzed the case under the standards of La. R.S. 9:2795, the Recreational Use Immunity Statute. The purpose of the Recreational Use Immunity Statute is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes. *Monteville v. Terrebonne Parish Consolidated Gov't*, 567 So. 2d 1097, 1101 (La. 1990); *Reed v. Employers Mut. Cas. Co.*, 741 So. 2d 1285, 1287 (La. App. 2 Cir. 1999), *writ denied*, 752 So. 2d 864 (La. 01/07/00). When a suitable tract is properly dedicated to one or more of the specific recreational purposes, as defined under La. R.S. 9:2795(A)(3), the landowner's exposure to liability to a person who enters or uses the premises for such a recreational purpose is drastically limited. *Monteville*, *supra* at 1101; *Reed*, *supra* at 1287. In such cases, the owner owes no duty of care to keep the premises safe or to give warnings of hazards, use, structure, or activity on the premises. *Monteville*, *supra* at 1101; *Reed*, *supra* at 1287.

11

The Recreational Use Immunity Statute is designed to induce the owners of "urban or rural land" to open them for public recreational purposes by limiting the liability of such owners to recreational users to situations in which injury results from (1) the owner's willful or malicious failure to warn of a dangerous condition or (2) intentional or grossly negligent acts by an employee of the public entity. La. R.S. 9:2795(B)(1), (E)(2)(d).

La. R.S. 9:2795 provides immunity to an owner of land being used for recreational purposes against liability for injuries to persons caused by a defect in the land, whether naturally occurring or man-made. La. R.S. 9:2795 states in relevant part:

> B. (1) Except for a **willful or malicious failure to warn against a dangerous condition**, use, structure, or activity, an owner of land . . . who permits with or without charge any person to use his land for recreational purposes as herein defined **does not** thereby:
>
>> (a) **Extend any assurances that the premises are safe for any purpose**.
>>
>> (b) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
>>
>> (c) **Incur liability for any injury to person or property caused by any defect in the land regardless of whether naturally occurring or man-made**.

(emphasis added).

Additionally, La. R.S. 9:2795(E)(2)(a) provides that "[t]he limitation of liability provided in this Section shall apply to any lands . . . which are owned, leased, or managed as a public park by the state or any of its political subdivisions and which are used for recreational purposes." The statute defines "recreational purposes" under La. R.S. 9:2795(A)(3), but the parties

12

do not dispute that Carter Park is a recreational facility that is owned, operated, and managed by Defendant.

In this assignment of error, Defendant contends that there was no "willful or malicious failure to warn against a dangerous condition." *See* La. R.S. 9:2795(B)(1). In support, Defendant argues that the testimony shows that it had no knowledge of any potentially dangerous condition of the fence.

In general, mere knowledge and appreciation of a risk does not constitute intent, and reckless or wanton conduct does not constitute intentional wrongdoing. *Stanley v. Airgas-Southwest Inc.*, 2015-0274 (La. 04/24/15), 171 So. 3d 915, 917; *Crump v. Lake Bruin Recreation & Water Conservation District*, 52,559 (La. App. 2 Cir. 04/10/19), 267 So. 3d 1229, 1236; *Sibert v. National Oilwell Varco*, 48,789 (La. App. 2 Cir. 02/26/14), 136 So. 3d 283, 288. The duty to warn does not extend to a potentially dangerous condition which should have been observed by a person in the exercise of reasonable care or which is just as obvious to the property owner as to a visitor. *Wood v. State, Through the Dep't of Wildlife & Fisheries*, 43,457 (La. App. 2 Cir. 08/13/08), 989 So. 2d 280, 288, *writ denied*, 08-2192 (La. 11/14/08), 996 So. 2d 1094; *Price v. Exxon Corp.*, 9-0392 (La. App. 1 Cir. 11/09/95), 664 So. 2d 1273, 1277.

Once a defendant establishes that it was entitled to immunity under La. R.S. 9:2795, the burden of establishing a malicious or willful failure to warn of a dangerous condition shifts to the plaintiff. *Doyle v. Lonesome Dev., L.L.C.*, 17-0787 (La. App. 1 Cir. 07/18/18), 254 So. 3d 714, 725, *writ denied*, 2018-1369 (La. 11/14/18), 256 So. 3d 291 (citing *Richard v.*

*Louisiana Newpack Shrimp Co., Inc.*, 11-309 (La. App. 5 Cir. 12/28/11), 82 So. 3d 541, 547-48).

In *Lambert v. State*, 40,170 (La. App. 2 Cir. 09/30/05), 912 So. 2d 426, 433-34, *writ denied*, 05-2310 (La. 04/17/06), 926 So. 2d 509 and 05-2311 (La. 04/17/06), 926 So. 2d 509), this Court was confronted with the question of whether the warnings provided at the Bayou D'Arbonne Lake Spillway/Dam were inadequate, and whether this inadequacy was willful or malicious. While *Lambert* was factually different from the case before us, it provides a detailed analysis of the La. R.S. 9:2795(B)(1) care and notice requirements incumbent on property owners with known dangers:

> Louisiana Revised Statute 9:2795(B)(1) imposes a duty to warn of a dangerous condition upon the owner of land open to any person for recreational use. The degree of care which satisfies this duty varies with the danger which will be incurred by negligence and must be commensurate with the danger involved. In regard to this duty as imposed by the recreational use statute, a **failure to warn of a dangerous condition connotes a conscious course of action, and is deemed willful or malicious when action is knowingly taken or not taken, which would likely cause injury, with conscious indifference to consequences thereof**.

*Lambert*, *supra* at 433-34 (emphasis added) (internal citations omitted).

In this case, Defendant claims that its employees did not have knowledge that the rebar was in fact sticking up. Defendant notes that Plaintiff's own expert stated that he saw no indication of intentional or malicious acts by the city employees. Even if the city employees had knowledge, Defendant argues that there is still no evidence that it took a conscious course of action likely to cause injury with conscious indifference to the consequences. *See Lambert*, *supra* at 434. We agree.

14

Plaintiff testified in open court that she was not watching where she was walking because she was looking for her grandson. She commented that if she had been paying attention she would not have tripped. Further, photographs of the t-ball field reveal that the pipe standers were in plain view. Below are the photos comprising Joint Exhibit 6 from trial, which depict the configuration of the fencing on the day of the accident and its supporting mechanism, the pipe standers.

 

*Figure 2: Trial Court - Joint Exhibit 6 (emphasis added by addition of red arrow depicting one of the pipe standers)*

While the pipe standers and rebar may be considered to pose a dangerous condition for visitors to Carter Park, there is no willful or malicious failure to warn against it. The pipe standers and securing rebar are plainly visible as depicted above, with nine pipe standers visible at the junction of the fence panels. Plaintiff simply failed to exercise reasonable care. La. R.S. 9:2795(B)(1); *Wood v. State*, *supra* at 288; *Price*, *supra* at 1277. Likewise, the Mayor of Bastrop testified that there have been no reported accidents at Carter Park in 40 years. While the Court relies on *Price*, *Lambert*, and other jurisprudence to guide us in this decision, we note that the case before us is factually distinguishable and unrelated to prior cases.

Defendant next argues that the exception in La. R.S. 9:2795(E)(2)(d), which precludes immunity from "intentional or grossly negligent acts by an

15

employee of the public entity," applies because the evidence shows that the city employees inspected Carter Park on the date of the accident and left caution tape in place. Defendant also states that the employees would have driven the rebar stake into the ground if they had known about it.

Gross negligence is the "want of even slight care and diligence" and "want of that diligence which even careless men are accustomed to exercise." *Foshee v. La. Farm Bureau Cas. Ins. Co.*, 41,842 (La. App. 2 Cir. 01/31/07), 948 So. 2d 1171, 1178, *writ denied*, 2007-0483 (La. 04/20/07), 954 So. 2d 169. Taking into account the trial court's findings, the city employees' actions regarding putting up caution tape near the location of the fall is not tantamount to determining whether Defendant was grossly negligent. Even if the city employees had knowledge and appreciation of the risk, this does not show intentional or grossly negligence conduct. La. R.S. 9:2795(E)(2)(d).

The photographs in Figure 2 above depict the narrowing pathway for participants and spectators to walk between the two adjacent fields. The condition of the fence panels, pipe standers, and rebar as described by Ms. Allen would have been visible to all spectators, including Plaintiff. An inattentive person, scanning the crowd of players for her grandson or looking away during a conversation, could wander into the line of the pipe standers and supporting rebar that otherwise are plainly visible. That appears to be what happened to Plaintiff.

In review of the facts and trial court's decision, we find that imposing liability on the Defendant was manifestly erroneous and would dilute the legislative purpose in enacting the statute and deter landowners from

16

offering property for recreational use thus diminishing quality of life opportunities across the state. The pipe stander and rebar stake were in plain view, there had not be any confirmed prior tripping incidents, and Plaintiff admitted she would have avoided tripping if she had been paying attention. Thus, the trial court erred in its judgment in favor of Plaintiff and we therefore reverse.

Having reversed the trial court regarding the City of Bastrop's entitlement to recreational use immunity, we pretermit any discussion of Defendant's other assignments of error.

## CONCLUSION

For the reasons set forth above, the trial court's judgment is reversed. Costs of this appeal are assessed to Plaintiff.

**REVERSED.**